No. 15-3610

# In the
# United States Court of Appeals
## for the Seventh Circuit

DANIEL MEDICI, DENNIS LEET, and JOHN KUKIELKA, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

v.

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division, No. 15 CV 5891
The Honorable **Charles P. Kocoras**, Judge Presiding.

## REPLY BRIEF OF APPELLANTS

LINDA D. FRIEDMAN
**STOWELL & FRIEDMAN, LTD.**
303 W. Madison Street
Suite 2600
Chicago, Illinois 60606
(312) 431-0888

*Attorney for Plaintiffs-Appellants*

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................. ii

Statement of the Case ............................................................................................... 1

    A. The Arbitrator Rejects the City's Stated Justifications for the Tattoo
       Ban................................................................................................................... 2

    B.  The City Decides to Rescind the Tattoo Ban ................................................ 3

    C.  The Court Rejects the City's Mootness Arguments ...................................... 4

Argument .................................................................................................................. 4

I.     This Appeal Is Not Moot ................................................................................. 5

    A.  Plaintiffs' Requests for Declaratory Relief and Damages Are Not Moot ........ 5

    B.  If the Court Deems this Appeal Moot, the Decision Below Should Be
       Vacated .......................................................................................................... 9

II.    The District Court Erred in Dismissing Plaintiffs' First
      Amendment Claims ....................................................................................... 12

    A.  The District Court Erred in Finding That Plaintiffs' Tattoos Were Not
       Expressive Speech on Matters of Public Concern ...................................... 13

    B.  The District Court Erred in Speculating About the Reasons the City
       Might Have Had for Enacting the Tattoo Ban .............................................. 14

    C.  The District Court Erred in Finding That the City's Purported
       Justifications Outweighed Plaintiffs' Free Speech Rights ........................... 17

Conclusion ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Ameritech Corp. v. Int'l Bhd. of Elec. Workers, Local 21*, 543 F.3d 414
(7th Cir. 2008) ................................................................................ 11

*Anderson v. City of Hermosa Beach*, 621 F.3d 1051 (9th Cir. 2010) .......................... 12

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) .............................. 7, 9, 12

*Brown v. Disciplinary Com. of Edgerton Volunteer Fire Dep't*, 97 F.3d
969 (7th Cir. 1996) ......................................................................... 14, 18

*Buehrle v. City of Key West*, 813 F.3d 973 (11th Cir. 2015) ................................... 12

*Chafin v. Chafin*, 133 S. Ct. 1017 (U.S. 2013) .................................................. 5

*Chaklos v. Stevens*, 560 F.3d 705 (7th Cir. 2009) ........................................... 22, 24

*Chicago United Industries v. City of Chicago*, 445 F.3d 940 (7th Cir.
2006) ........................................................................................ 7, 8

*Church of Scientology of Calif. v. United States*, 506 U.S. 9 (1992) ........................... 6

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) .................................................... 12

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) ................................ 10

*City of San Diego v. Roe*, 543 U.S. 77 (2004) ........................................... 18, 20, 21

*City of Watseka v. Ill. Public Action Council*, 796 F.2d 1547 (7th Cir.
1986) .......................................................................................... 8

*Coleman v. City of Mesa*, 284 P.3d 863 (Ariz. 2012) ............................................ 13

*Connick v. Myers,* 461 U.S. 138 (1983) ........................................................ 18

*Cornucopia Inst. v. U.S. Dep't of Agriculture*, 560 F.3d 673 (7th Cir.
2009) .......................................................................................... 6

*Craig v. Rich Township High School Dist. 227*, 736 F.3d 1110 (7th Cir.
2013) ...................................................................................... 18, 20

*Crue v. Aiken*, 370 F.3d 668 (7th Cir. 2004) ............................................. 5, 6, 9

*Daniels v. City of Arlington*, 246 F.3d 500 (5th Cir. 2001) .................................... 21

*Driebel v. City of Milwaukee*, 298 F.3d 622 (7th Cir. 2002) .................................... 12

*Eberhardt v. O'Malley*, 17 F.3d 1023 (7th Cir. 1994) ...................................... 16, 20

*EEOC v. Aerotek, Inc.*, 815 F.3d 328 (7th Cir. 2016) ........................................... 6

*Fox v. Bd of Trustees of State Univ. of N.Y.*, 42 F.3d 135 (2d Cir. 1994) ...................... 7

*Foxxxy Ladyz Adult World, Inc. v. Vill. of Dix*, 779 F.3d 706 (7th Cir.
2015) ......................................................................................... 16

*Frank v. Walker*, 819 F.3d 384 (7th Cir. 2016) ................................................... 9

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) ........................................................................ 24

*Gazarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933 (7th Cir. 2004) .............................................................................................. 22

*Germeraad v. Powers*, 826 F.3d 962 (7th Cir. 2016) .................................. 6, 9

*Griffin v. Thomas*, 929 F.2d 1210 (7th Cir. 1991) .................................... 18

*Gustafson v. Jones*, 117 F.3d 1015 (7th Cir. 1997) ............................. 13, 17

*Hanneman v. Breier*, 528 F.2d 750 (7th Cir. 1976) ............................ 12, 20

*Hulbert v. Wilhelm*, 120 F.3d 648 (7th Cir. 1997) .................................... 9

*In re Smith*, 964 F.2d 636 (7th Cir. 1992) ............................................. 10

*Jefferson v. Ambroz*, 90 F.3d 1291 (7th Cir. 1996) ............................. 19, 20

*Jucha v. City of N. Chicago*, 63 F. Supp. 3d 820 (N.D. Ill. 2014) ................ 12

*Kelley v. Johnson*, 425 U.S. 238 (1976) ............................................. 20, 21

*Khuans v. School Dist. 110*, 123 F.3d 1010 (7th Cir. 1997) ................... 19, 20

*Killian v. Concert Health Plan*, 742 F.3d 651 (7th Cir. 2013) ................... 5, 6

*Kokkinis v. Ivkovich*, 185 F.3d 840 (7th Cir. 1997) .............................. 16, 20

*Lalowski v. City of Des Plaines*, 789 F.3d 784 (7th Cir. 2015) .................... 20

*McGreal v. Ostrov*, 368 F.3d 657 (7th Cir. 2004) ................................. 17, 24

*Messman v. Helmke*, 133 F.3d 1042 (7th Cir. 1998) ............................. 17, 20

*Pakovich v. Verizon LTD Plan*, 653 F.3d 488 (7th Cir. 2011) ...................... 6

*Pickering v. Bd. of Ed. of Township High School Dist. 205*, 391 U.S. 563 (1968) ............................................................................ passim

*Rankin v. McPherson*, 483 U.S. 378 (1987) ........................................ 20, 22

*Rodriguez v. City of Chicago*, 156 F.3d 771 (7th Cir. 1998) ....................... 21

*Salaita v. Kennedy*, 118 F. Supp. 3d 1068 (N.D. Ill. 2015) ................... 17, 18

*Seven Words LLC v. Network Solutions*, 260 F.3d 1089 (9th Cir. 2001) ............ 7, 8

*Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795 (7th Cir. 2016) ........................................................................ 5, 9

*Thomas R.W. v. Mass. Dep't of Ed.*, 130 F.3d 477 (1st Cir. 1997) ................ 7, 8

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S 18 (1994) ......................................................................... 10, 11

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) ..................... 9, 10, 11

*United States v. Nat'l Treas. Employees Union*, 513 U.S. 454 (1995) .................. passim

*Volkman v. Ryker*, 736 F.3d 1084 (7th Cir. 2013)...................................................... 16, 20

*Wainscott v. Henry*, 315 F.3d 844 (7th Cir. 2003) .................................................... 22, 23

*Waters v. Churchill*, 511 U.S. 661 (1994).......................................................................... 22

**Other Authorities**

Lizzie Tufano, *Chicago Police Scrap No-Tattoo Rule to Boost Morale*,
    DNA Info (Sept. 21, 2016), available at https://
    www.dnainfo.com/chicago/20160921/downtown/chicago-police-
    tattoo-uniform-policy) ................................................................................................ 4

**Rules**

Federal Rule of Civil Procedure 60(b) ................................................................................ 11

## Statement of the Case

Plaintiffs-Appellants Daniel Medici and John Kukielka are military veterans who have served as police officers for the City of Chicago ("City") for more than eleven (11) and seven (7) years, respectively. (A 14 ¶¶ 6-7.)[1] Each bears a military or religious tattoo. (A 14-15 ¶¶ 8-9.) On June 8, 2015, the City for the first time prohibited police officers from displaying visible tattoos while on duty (the "Tattoo Ban"). (A 14 ¶ 5; A 20-21.) Plaintiffs filed this action on behalf of a proposed class of Chicago police officers who allege that the Tattoo Ban violates their First Amendment rights. (A 13-16.) Plaintiffs requested class certification, declaratory judgment, and "other legal and/or equitable relief." (A 16.)

The City conceded in the district court, as it does here, that Plaintiffs' on-duty display of their tattoos constitutes "expressive speech" by "citizen[s] on a matter of public concern.'" (Dkt. 9 at 7 n.5; City Brief at 16 n.3.) Nevertheless, the district court dismissed the case and entered judgment for the City less than four months after the complaint was filed. (A 1.) Plaintiffs timely appealed (App. Dkt. 1) and filed their opening brief on January 20, 2016, arguing (at 17-27), among other things, that the City's purported objectives of "uniformity and professionalism" could not justify the blanket Tattoo Ban.

---

[1] "Dkt." refers to the CM/ECF record in the district court; "App. Dkt." refers to the CM/ECF record in this Court. "A" refers to the Appendix to the Brief of Appellants filed on January 20, 2016 (App. Dkt. 11). "CA" refers to the Appendix to the City's Brief of Defendant-Appellee filed on February 6, 2017 (App. Dkt. 35, "City Brief"). Plaintiff Dennis Leet is not a party to this appeal.

A. <u>The Arbitrator Rejects the City's Stated Justifications for the Tattoo Ban</u>

Meanwhile, the Fraternal Order of Police, Chicago Lodge No. 7, was prosecuting a grievance challenging the Tattoo Ban as a violation of the union contract, because the City had neither bargained with the union nor adequately considered alternatives before imposing the blanket ban on visible tattoos. (App. Dkt. 22 at 2; *see* A 14 ¶ 5.) On March 11, 2016, after full briefing and an evidentiary hearing, the arbitrator ruled that the "[Police] Department unilaterally imposed a policy imposing significant burdens on police officers, with little demonstrated need for the change, and with very little relationship between certain of the stated objectives and the actual policy." (Arbitration Award, CA at 33.)

During the arbitration hearing, the City did not dispute that there had never been any regulation of visible tattoos for police officers in the history of the Chicago Police Department. (CA at 7.) The City also "conceded that the Department had received no citizen complaints of offensive tattoos, or any other objections, before the Superintendent" issued the Tattoo Ban. (*Id.* at 14; *id.* at 19, 28, 30.) The City repeats that concession on appeal (at 20).

The arbitrator found that the true reason for the Tattoo Ban was "an idiosyncratic personal preference" of the former Superintendent that had nothing to do with uniformity, professionalism, or maintaining public trust and respect:

> It is important to note at the outset that the [City's] decision was not motivated by any actual problem resulting from any officer's tattoo. The Department received not a single complaint from any of the millions of residents of Chicago. It appears, with all respect to former Superintendent McCarthy, that he simply decided one day he no longer

wished to observe tattoos on his officers, and directed management to ban them.

(*Id.* at 30; *see also id.* at 31 & n.38.)

Noting that New York City and the Marine Corps maintain tattoo policies that "grandfathered" preexisting tattoos, the arbitrator also found that the City had no basis for its view that grandfathering would be "unworkable." (*Id.* at 19, 31.) Finally, the arbitrator rejected the City's "speculative" argument that offensive and religious tattoos would undermine public trust, because the City chose a blanket ban on tattoos rather than prohibiting "only offensive or sectarian tattoos." (*Id.* at 31.)

The arbitrator ordered the City to rescind the Tattoo Ban because "[t]he burdens imposed by the new policy are very substantial, while the proffered justifications are speculative, contradictory, or quite a bit narrower than the policy's reach." (*Id.* at 32.) The arbitrator also directed the City to expunge any discipline imposed on police officers "and make whole those employees who can demonstrate that they have expended funds in their attempts to comply with the policy." (*Id.* at 33.)

## B. The City Decides to Rescind the Tattoo Ban

On April 6, 2016, this Court granted the parties' joint motion to stay proceedings on appeal while the City decided whether to comply with the arbitration award or file a petition to vacate it. (App. Dkt. 17.) The City left the Tattoo Ban in place while mulling its options for seven weeks before deciding, on April 29, 2016, to rescind the Tattoo Ban instead of challenging the arbitrator's award. (App. Dkt. 18 at 2.) The

new Superintendent publicly announced the rescission of the Tattoo Ban five

months later, on September 21, 2016.[2]

### C. The Court Rejects the City's Mootness Arguments

On September 29, 2016, the City moved to dismiss this appeal, claiming that the

arbitration award issued six and one-half months earlier had rendered the appeal

moot. (App. Dkt. 22.) This Court denied the motion but allowed the City to address

the issue in its merits brief. (App. Dkt. 27.) The City then moved to reconsider the

Court's ruling (App. Dkt. 28), which the Court also denied. (App. Dkt. 29.)

### Argument

Paradoxically, the City argues that the arbitration award renders this appeal

moot, and also that the Court should uphold the Tattoo Ban in order to promote

"uniformity and professionalism" – the very rationale rejected by the arbitrator. (CA

30-31.) The City is wrong on both counts. This appeal is not moot because Plaintiffs

are entitled to and do seek damages for the infringement of their First Amendment

rights. This Court should correct the district court's error in dismissing the

complaint based on its "finding" that the City's purported interest in "uniformity

and professionalism" outweighed what the City acknowledged as Plaintiffs' right to

expressive speech on matters of public concern.

---

[2] *See* City Brief at 7-8 n.2 (citing Lizzie Tufano, *Chicago Police Scrap No-Tattoo Rule to Boost Morale*, DNA Info (Sept. 21, 2016), available at https://www.dnainfo.com/chicago/20160921/downtown/chicago-police-tattoo-uniform-policy).

## I.  This Appeal Is Not Moot.

This Court correctly denied the City's motion to dismiss this appeal as moot. (App. Dkt. 27, 29.) In its brief on the merits, the City presents the same arguments it urged in its motions to dismiss and to reconsider. The Court should again reject those arguments, as explained below.

### A.  Plaintiffs' Requests for Declaratory Relief and Damages Are Not Moot.

Despite the City's decision to rescind the Tattoo Policy, Plaintiffs are entitled to seek declaratory relief and damages for the violation of their First Amendment rights. "Courts routinely entertain suits for damages stemming from repealed laws." *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 804 (7th Cir. 2016) (holding that damages claim prevented First Amendment challenge to repealed ordinances from becoming moot). The availability of these legal remedies means this case is not moot. *Crue v. Aiken*, 370 F.3d 668, 677-78 (7th Cir. 2004) (action not moot despite defendant's resignation and permanent retraction of email violating First Amendment rights, because plaintiffs could still seek declaratory relief and damages).

A party moving to dismiss a case as moot must bear the heavy burden of demonstrating that "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Killian v. Concert Health Plan*, 742 F.3d 651, 660 (7th Cir. 2013) (en banc) (quoting *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (U.S. 2013)). "As [this Court has] previously held, so long as a court retains the 'raw ability' to take some action that will have a concrete effect on the parties' rights, the

case is not moot even if the court would be reluctant to take that action."
*Germeraad v. Powers*, 826 F.3d 962, 968-69 (7th Cir. 2016) (citations omitted);
*accord Killian*, 742 F.3d at 660. A case does not become moot just because the
original relief requested is no longer possible, if a different but "partial remedy"
remains "possible." *Church of Scientology of Calif. v. United States*, 506 U.S. 9, 12-
13 (1992); *accord EEOC v. Aerotek, Inc.*, 815 F.3d 328, 332 (7th Cir. 2016).

Indeed, the cases cited by the City recognize that an "entire claim is not mooted
simply because the *specific* relief it sought has been rendered moot," if the
appellants also seek damages or other relief. *Cornucopia Inst. v. U.S. Dep't of
Agriculture*, 560 F.3d 673, 676 (7th Cir. 2009) (emphasis in original); *Pakovich v.
Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) (quoting *Cornucopia*). Here,
unlike in *Cornucopia* or *Pakovich*, the Plaintiffs continue to seek both damages and
declaratory relief. "When a claim for injunctive relief is barred but a claim for
damages remains, a declaratory judgment as a predicate to a damages award can
survive." *Crue*, 370 F.3d at 677-78.

Plaintiffs' complaint requests declaratory relief and "such other legal and/or
equitable relief as this Court may deem proper." (A 16.) Accordingly, this case
continues to present a live controversy. *Killian*, 742 F.3d at 664 & n.27. The *en banc*
court in *Killian* held that a plaintiff's prayer for "such other legal or equitable relief
as the court deems appropriate" encompassed a request for declaratory relief and
"supports an exercise of jurisdiction." *Id.* Characterizing this holding as "dicta," the
City (at 10-13) urges this Court to disregard *Killian* in order to avoid a conflict with

6

a Supreme Court decision and rulings in other circuits. But rejecting the City's mootness claim here would not conflict with those decisions, each of which involved damages claims asserted only after "protracted litigation" in the lower courts. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 53-56, 71 (1997) (rejecting belated damages claim asserted after second amended complaint, two-day trial, and post-judgment rulings in district court, where plaintiff's voluntary resignation rendered case moot); *Fox v. Bd. of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 137, 141 (2d Cir. 1994) (damages first requested after amended pleadings, preliminary injunction ruling, trial, and prior appeal to the Supreme Court, where valid defenses precluded any "claim for money damages, nominal or otherwise"); *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1097-98 (9th Cir. 2001) (rejecting damages claim made on the eve of oral argument "[u]nder the circumstances of this case," because litigation had been pending for two years in district court); *Thomas R.W. v. Mass. Dep't of Ed.*, 130 F.3d 477, 478-80 (1st Cir. 1997) (rejecting damages claim first made in reply brief on appeal, after years of litigation including administrative hearing, summary judgment ruling by magistrate, and *de novo* review by district court).

In sharp contrast to these cases, this case was pending less than four months before the district court dismissed it. *Chicago United Industries v. City of Chicago* emphasizes this crucial distinction. 445 F.3d 940, 948 (7th Cir. 2006). In *Chicago United*, a contractor sought injunctive relief for the City's cancellation of its contract and debarment without first providing the contractor a due process hearing. *Id.* at

941-42. Shortly after the court issued a TRO, the City rescinded the contractor's cancellation and debarment, promised due process hearings for future cases, and moved to dismiss the suit as moot. *Id.* at 942. The district court denied the motion. *Id.* at 948. The complaint included no claim for damages, which the contractor asserted for the first time in its appellate brief. *Id.*

This Court rejected the City's argument that the case was moot because the complaint lacked a prayer for damages. *Id.* at 942, 948. The Court distinguished *Seven Words*, *Thomas R.W.*, and similar cases that had remained pending in the lower court for extended periods: "This case is different because the litigation had barely begun before it came to us[.]" *Id.* The same is true here. *Chicago United* was pending in the district court for three months, *id.* at 942-43, and this case was pending in the district court for just over three months. Indeed, Plaintiffs' claim to damages is stronger than in *Chicago United*, where the City had asserted mootness in the district court but the contractor first requested damages in its appellate brief. Here, the City did not argue that the case was moot until *after* Plaintiffs had filed their appellate brief, and Plaintiffs asserted their damages claim promptly thereafter. (App. Dkt. 26-1.)

Plaintiffs are entitled to "substantial money damages" to compensate them for the injury to their First Amendment rights, even if those damages may be difficult to quantify. *City of Watseka v. Ill. Public Action Council*, 796 F.2d 1547, 1558-59 (7th Cir. 1986) (affirming $5,000 in damages for organization's inability to disseminate its views in violation of First Amendment, in addition to lost revenue of

$3,300), *aff'd*, 479 U.S. 1048 (1987); *see also Hulbert v. Wilhelm*, 120 F.3d 648, 656 (7th Cir. 1997) (affirming $100,000 award to compensate plaintiff for physical and mental harm due to First Amendment violation). Indeed, even if the harm to Plaintiffs' First Amendment interests had been *de minimis*, an award of nominal damages would be appropriate. *Six Star Holding*, 821 F.3d at 805. The City does not dispute that "First Amendment rights have inherent value," but the City argues (at 11) that Plaintiffs should be barred from seeking damages because they have not yet specified "the nature or extent" of the injury resulting from the deprivation of those rights. This argument makes no sense. Mootness rests neither on the amount of damages sought nor the likelihood they will be awarded. *Germeraad*, 826 F.3d at 968-69.

A claim for damages, nominal or otherwise, constitutes a live claim or controversy that cannot be dismissed as moot. *Crue*, 370 F.3d at 677-78 (affirming nominal damages for First Amendment violation, awarded after defendant rescinded the challenged restriction on free speech). Accordingly, Plaintiffs' claim is not moot and this appeal should not be dismissed.

### B.  If the Court Deems this Appeal Moot, the Decision Below Should Be Vacated.

Even if this appeal were moot – and it is not, as explained above – this Court should nevertheless vacate the district court's opinion.  *See Arizonans*, 520 U.S. at 71-72; *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950); *Frank v. Walker*, 819 F.3d 384, 385 (7th Cir. 2016). As the Supreme Court explained in *Arizonans*:

> When a civil case becomes moot pending appellate adjudication, "[t]he established practice . . . in the federal system . . . is to reverse or vacate the judgment below and remand with a direction to dismiss." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S. Ct. 104, 106, 95 L. Ed. 36 (1960). Vacatur "clears the path for future relitigation" by eliminating a judgment the loser was stopped from opposing on direct review." *Id.*, at 40, 71 S.Ct., at 107.

520 U.S. at 71 (omissions in original). "When that procedure is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary." *Munsingwear*, 340 U.S. at 39-40; *accord City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288 n.9 (1982); *In re Smith*, 964 F.2d 636, 637 (7th Cir. 1992).

Vacatur of the decision below is particularly appropriate in this case because any "mootness results from the unilateral action of the party who prevailed in the lower court." *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S 18, 23 (1994). After mulling its options for almost two months, the City decided unilaterally not to appeal the arbitration award but instead to rescind the Tattoo Ban. It was this decision by the City, and not merely the arbitrator's award, that the City claims (at 4, 6-7) as the basis of its mootness argument. Tellingly, the City asked this Court to stay briefing of the appeal while the City decided whether to appeal the arbitration award, and only moved to dismiss the appeal after publicly announcing that the Tattoo Ban was rescinded. (App. Dkt. 16, 22.) The City's conduct demonstrates that the question of mootness did not arise until the City publicly rescinded the ban. That decision by the City should not have the collateral effect of insulating the judgment below from appellate review.

10

The City argues (at 15) that Plaintiffs caused their own appeal to become moot, because they are members of the union that filed the grievance that led to the arbitration award that then led to the City's rescission of the Tattoo Ban. This tenuous argument is incorrect and inconsistent with the authority the City cites. *See Ameritech Corp. v. Int'l Bhd. of Elec. Workers, Local 21*, 543 F.3d 414 (7th Cir. 2008); *U.S. Bancorp Mtg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994). Both *Ameritech* and *U.S. Bancorp* involved voluntary settlements, which do not justify vacatur of lower court decisions because of the appellants' "voluntary forfeiture of review." *U.S. Bancorp*, 513 U.S. at 26; *accord Ameritech*, 543 F.3d at 419. Here, Plaintiffs did nothing to forfeit appellate review of the district court's decision. They did not voluntarily settle their claims, they did not control the union grievance process, and they certainly did not prevent the City from challenging the arbitration award.

Moreover, as this Court held in *Ameritech*, even if *Munsingwear* vacatur were inapplicable, vacatur would still be proper in this case under Federal Rule of Civil Procedure 60(b). Ameritech and its union agreed to settle two appeals through a separate arbitration. 543 F.3d at 419. This Court directed the district court to vacate its underlying ruling, because it was inconsistent with the arbitration award. *Id.* at 419-20. Here, the district court ruling should likewise be vacated because it is inconsistent with the arbitration award that prompted the City to rescind the Tattoo Ban.

The City contends (at 7) that, "if the City ever enacted a different tattoo policy, . . . plaintiffs could bring a new lawsuit." Of course, if Plaintiffs did so, the City would undoubtedly argue that the new lawsuit was precluded by the district court's decision in this case. That is precisely why the lower court's decision should be vacated. Plaintiffs should not be prejudiced by a ruling they were prevented from appealing through an event over which they had no control. *See Arizonans*, 520 U.S. at 71-72.

## II. The District Court Erred in Dismissing Plaintiffs' First Amendment Claims.

Police officers, no less than other government employees, "do not surrender" their First Amendment rights by choosing to serve their communities. *Driebel v. City of Milwaukee*, 298 F.3d 622, 637 (7th Cir. 2002); *Hanneman v. Breier*, 528 F.2d 750, 754 (7th Cir. 1976). The City's Tattoo Ban foreclosed an important medium of expression for on-duty police officers that enjoys broad protection under the First Amendment. *See City of Ladue v. Gilleo*, 512 U.S. 43, 55 (1994) ("laws that foreclose an entire medium of expression" raise particular First Amendment concerns, even without any "content or viewpoint discrimination"); *Buehrle v. City of Key West*, 813 F.3d 973, 976-77 (11th Cir. 2015) (holding that tattoos qualify for First Amendment protection); *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1066 (9th Cir. 2010) (noting that tattoos are a unique form of expression entitled to First Amendment protection); *Jucha v. City of N. Chicago*, 63 F. Supp. 3d 820, 828 (N.D. Ill. 2014) (holding that "the First Amendment protects tattoos as speech in the same

way that it protects paintings, drawings, or video games"); *accord Coleman v. City of Mesa*, 284 P.3d 863, 869-71 (Ariz. 2012).

The Tattoo Ban fails both tests for determining whether a governmental employer has violated the First Amendment rights of its employees. Under *Pickering v. Board of Education of Township High School District 205,* courts must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. 563, 568 (1968). Regulations that "chill[] potential speech before it happens," however, are permitted only if the employee speech has a "necessary impact on the actual operation" of the government. *United States v. Nat'l Treas. Employees Union*, 513 U.S. 454, 468 (1995) ("*NTEU*").

### A. The District Court Erred in Finding That Plaintiffs' Tattoos Were Not Expressive Speech on Matters of Public Concern.

Plaintiffs' opening brief (at 14-17) demonstrated that the district court improperly rejected Plaintiffs' allegations establishing that their tattoos constitute expressive speech on matters of public concern. Instead of accepting Plaintiffs' allegations as true and according them all reasonable inferences in their favor, as it was required to do, the district court improperly found that Plaintiffs' tattoos are nothing more than "personal expression, and not a form of speech on matters of public concern." (A 8, 11.) *Cf. Gustafson v. Jones*, 117 F.3d 1015, 1018-19 (7th Cir. 1997).

But the Court need not decide this issue, because the City has conceded it. Both in the district court and before this Court, the City admits that Plaintiffs' on-duty display of their tattoos constitutes "expressive speech" by "citizen[s] on a matter of public concern.'" (Dkt. 9 at 7 n.5; App. Dkt. 35 at 16 n.3.)[3] The only issues, therefore, are whether the City has established legitimate interests justifying the Tattoo Ban and whether the Court should hold that those interests outweigh Plaintiffs' First Amendment rights as a matter of law.

### B. The District Court Erred in Speculating About the Reasons the City Might Have Had for Enacting the Tattoo Ban.

As Plaintiffs established in their opening brief (at 17-23), the district court adopted the unsworn assertions of City attorneys and the court's own personal views in finding that the City had legitimate justifications for its Tattoo Ban. The City argues (at 16-17) – as did the district court – that the Plaintiffs pleaded themselves out of court by alleging that "[t]he City's only explanation" for the Tattoo Ban "is to 'promote uniformity and professionalism.'" (A 15 ¶ 10.) The City also argues (at 28) that Plaintiffs never suggested to the district court, and thereby waived, any argument that the City's stated explanation was not the true reason for enacting the Tattoo Ban. Nothing could be further from the truth. As an initial matter, the same paragraph of the complaint that refers to the City's purported

---

[3] The City half-heartedly argues (at 19) that Plaintiffs' statement that one who bears a tattoo "is highly committed to the message he is displaying" means that the speech here is personal rather than on matters of public concern. But a peace officer's level of commitment to the message he conveys about matters of public concern emphasizes rather than detracts from the protected nature of the message. *See Brown v. Disciplinary Com. of Edgerton Volunteer Fire Dep't*, 97 F.3d 969, 974 (7th Cir. 1996).

interests in "uniformity and professionalism" explains why the Tattoo Ban does not promote those interests:

> Unlike other municipalities, the City's dress code does not bar only tattoos displaying racism, sexism, obscenity, gang-related symbols, political sentiments or those undermining the City or department values. The City's ban is not "offense related" but sweeps broadly to require the cover-up of all tattoos.

(A 15 ¶ 10.) The next paragraph goes on to explain how the Tattoo Ban's cover-up requirements actually detract from police officers' effectiveness by causing overheating, skin irritation, and discomfort. (*Id.* ¶ 11.)

Moreover, throughout their brief in the district court, Plaintiffs referred repeatedly to the City's "*supposed*" and "*professed* justification for the tattoo ban," "the City's *asserted* interest in 'uniformity and professionalism,'" and "the interests it *claims* to be promoting through the tattoo ban." (Dkt. 16 at 10, 13, 14, 15, 18, emphasis added.) Plaintiffs also explicitly argued that "the supposed threat to uniformity and professionalism is 'merely conjectural' rather than 'real.'" (*Id.* at 14.) In no uncertain terms, therefore, Plaintiffs argued in the district court that the City's stated explanation for the Tattoo Ban was neither the true reason nor a legitimate response to any perceived harm. The City has no basis for claiming that Plaintiffs waived this argument.

The City also claims (at 21-22) that the district court properly relied on prior caselaw to supply a legitimate justification for the Tattoo Ban. But those prior cases were decided on a trial or summary judgment record, where the municipalities submitted evidence to substantiate their reasons for restricting speech. *Volkman v.*

15

*Ryker*, 736 F.3d 1084, 1092 (7th Cir. 2013) (affirming bench trial judgment because corrections department determined that supervisor's speech had "undermine[d] other employees' respect for the chain-of-command" and for work rules); *Kokkinis v. Ivkovich*, 185 F.3d 840, 842 (7th Cir. 1997) (affirming summary judgment where "[e]vidence in the record" showed that police officer's television critique of the department had damaged work relationships, embarrassed superiors and coworkers, and "undermined the Chief's ability to maintain authority and discipline"). Here, on the other hand, there is no responsive pleading, much less evidence, to support the City's supposed justification for the Tattoo Ban. As Plaintiffs pointed out in their opening brief, caselaw cannot substitute for evidence that would justify a restriction on free speech. *Foxxxy Ladyz Adult World, Inc. v. Vill. of Dix*, 779 F.3d 706, 713 (7th Cir. 2015); *Eberhardt v. O'Malley*, 17 F.3d 1023, 1027-28 (7th Cir. 1994).[4]

Perhaps understandably, the City attempts (at 20-21, 25 n.4) to quibble with the arbitrator's analysis, but it does not dispute any of the evidence presented at the arbitration hearing. That evidence demonstrates that the City's Tattoo Ban was enacted on the "idiosyncratic personal preference" of the former Superintendent and not out of any legitimate concern for uniformity, professionalism, or public trust. (CA 8-10, 14-16, 18-20, 28, 30-32.) Even if the arbitration award has no *res judicata*

---

[4] The City attempts (at 22) to analogize their reliance on caselaw as a substitute for evidence justifying the Tattoo Ban to Plaintiffs' citation of authority "bolster[ing] their complaint's allegation that their tattoos are speech on matters of public concern." Even if the analogy were apt – and it is not – it is irrelevant because the City (at 16 n.3) does not dispute this element of Plaintiffs' claim.

or collateral estoppel effect on this case, the testimony presented during the hearing provides useful insight into evidence the district court should have heard before entering judgment for the City.

### C. The District Court Erred in Finding That the City's Purported Justifications Outweighed Plaintiffs' Free Speech Rights.

As Plaintiffs demonstrated in their opening brief (at 28-31), the District Court improperly weighed its inference of Plaintiffs' interests in "personal expression" against the interests the Court ascribed to the City in enacting the Tattoo Ban. *Gustafson*, 117 F.3d at 1019; *Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1083 (N.D. Ill. 2015) (declining to "engage in a full-fledged *Pickering* balancing analysis" at the motion to dismiss stage). The City asserts (at 16-32) four arguments in defense of the district court's decision to dismiss the case on the ground that the City's interests outweigh those of the Plaintiffs. The City's arguments lack merit both legally and factually.

First, the City argues (at 16) that the "weighing of interests" in a First Amendment case "presents a legal question." *But see McGreal v. Ostrov*, 368 F.3d 657, 675-76 (7th Cir. 2004) ("A *Pickering* analysis is a highly fact-specific inquiry[.]"). The City's only support for this proposition is *Messman v. Helmke*, a case decided not a motion to dismiss but on cross motions for summary judgment. 133 F.3d 1042, 1044 (7th Cir. 1998). In the summary judgment context, *Messman* noted that "[e]ach step" in the First Amendment analysis "involves a question of law that we review *de novo*." *Id.* at 1046. *Messman* cited three cases, two of which deal

with whether the plaintiff was speaking on a matter of public concern[5] – an issue the City does not contest in this case. The third cited case reversed summary judgment for the governmental employer, because the employee was speaking as a citizen on a matter of public concern rather than advancing his personal interests. *Brown*, 97 F.3d at 974. *Brown* also held that "[t]he record comes nowhere near showing that the Fire District had a convincing reason to suppress Brown's speech." *Id.*

The same is true in this case. As one court recently observed:

> The cases in which it is clear at the motion to dismiss stage that a First Amendment claim is certain to fail usually involve speech that is not on a matter of public concern or speech that is not protected at all.

*Salaita*, 118 F. Supp. 3d at 1083. Plainly this is not such a case. The City admits that Plaintiffs' tattoos constitute speech on a matter of public concern that is protected under the First Amendment.

The City argues repeatedly (at 19-20, 22-23, 26-27) that the district court properly weighed Plaintiffs' free speech rights against the City's purported justification for the Tattoo Ban on a motion to dismiss. The City cites scores of cases in support of this argument, but only four of them were decided on a motion to dismiss: *City of San Diego v. Roe*, 543 U.S. 77 (2004); *Craig v. Rich Township High School Dist. 227*, 736 F.3d 1110 (7th Cir. 2013), *Khuans v. School Dist. 110*, 123

---

[5] *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983) ("The inquiry into the protected status of speech is one of law, not fact."); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991) (whether "a public employee speaks . . . as a citizen upon matters of public concern" is a "threshold issue . . . to be decided by the court as a matter of law.").

F.3d 1010 (7th Cir. 1997), and *Jefferson v. Ambroz*, 90 F.3d 1291 (7th Cir. 1996). As *Craig* explained, the holdings in these cases are limited to the "rare" situation in which a plaintiff pleads himself out of court. 736 F.3d at 1121; *see also Jefferson*, 90 F.3d at 1298 ("extraordinary facts" alleged in complaint permit court to depart from rule that *Pickering* balancing "would, as a general matter, require a more fully developed factual record") (Rovner, J., concurring). For example, Roe, a police officer, made and sold a video of himself stripping out of a police uniform and masturbating, which the Court held did not qualify as speech on a matter of public concern. *Roe*, 543 U.S. at 84. Craig, a high school guidance counselor, incorporated into his complaint both "It's Her Fault," the sexually explicit book he wrote based on his counseling experiences, and the school district's assessment that the "hypersexualized" book would deter high school girls from asking Craig for advice. *Craig*, 736 F.3d at 1119-21. Khuans, a school psychologist, spoke on a matter of personal rather than public concern, and her allegations showed that her criticisms of her supervisor created disruption and disharmony in the workplace. *Khuans*, 123 F.3d at 1017. Jefferson, a probation officer, admitted calling into a radio talk show twice where he pretended to be a gang member and severely criticized the police department and the court. *Jefferson*, 90 F.3d at 1293-94.

Here, in contrast, nothing in the complaint demonstrates that Plaintiffs' continued display of the same tattoos they have had for many years could reasonably be expected to undermine the police department's mission or the professionalism of its officers. "Taking all the facts in the light most favorable to

[Plaintiffs], and taking into account the fact that we are only at the pleadings stage, and thus do not have the benefit of a more complete record, [the district court should not have said] as a matter of law that the *Pickering* balance favors the [City]." *Khuans*, 123 F.3d at 1020 (Wood, J., concurring). This Court should reverse the dismissal of Plaintiffs' First Amendment claim because it was "altogether premature" for the district court "to speculate about the possibility that [the City] may have had a legitimate reason for" imposing the Tattoo Ban. *Eberhardt*, 17 F.3d at 1027.

Tellingly, aside from the four cases discussed above (*Roe*, *Craig*, *Khuans*, and *Jefferson*), all of the cases the City cites in arguing that its interests outweigh Plaintiffs' free speech rights as a matter of law involved decisions on summary judgment or after trial, not on the pleadings. *E.g.*, *Rankin v. McPherson*, 483 U.S. 378, 383 (1987) (affirming reversal of summary judgment for defendants); *Kelley v. Johnson*, 425 U.S. 238, 243-44, 249 (1976) (reversing due process ruling issued after evidentiary hearing); *Lalowski v. City of Des Plaines*, 789 F.3d 784, 791-92 (7th Cir. 2015) (affirming summary judgment against police officer who "hurl[ed] profanity and insults" at demonstrators in an "abusive and degrading" manner); *Volkman*, 736 F.3d at 1088 (affirming judgment for corrections department after bench trial); *Kokkinis*, 185 F.3d at 841-42 (affirming summary judgment against police officer who publicly mocked the police chief and department as "clueless" and vindictive); *Messman*, 133 F.3d at 1044-46 (affirming summary judgment and holding that firemen were not denied freedom of association); *Hanneman*, 528 F.2d at 752, 754

(reversing summary judgment because police department's interests in confidentiality did not outweigh police officers' free speech rights); *Daniels v. City of Arlington*, 246 F.3d 500, 504 (5th Cir. 2001) (affirming summary judgment against police officer because his desire to wear a religious pin on his uniform was purely personal).[6]

Second, the City argues (at 20-24) that this Court should defer to hypothetical, unpleaded reasons for the Tattoo Ban posited by the City's attorneys and the district court. Citing *Roe*, the City argues (at 23-24) that *NTEU* does not apply to this case because the Tattoo Ban "regulated speech only during working hours." According to the City, *Roe* holds that the *NTEU* test does not apply where employees "took deliberate steps to link" their speech to their employment. The City's attempt to analogize this case to *Roe* is misplaced. The plaintiff in *Roe* was a police officer who made and sold videos of himself stripping out of a police uniform and then masturbating. 543 U.S. at 78. *Id.* at 79. Roe was fired after he failed to comply with the police department's order to stop selling the videos. *Id.* at 79. The court held that the employer's interests were harmed precisely because Roe had deliberately linked his videos to the police department, thereby bringing "the mission of the employer and the professionalism of its officers into serious

---

[6] While criticizing Plaintiffs (at 25-27) for relying on cases involving pleading standards and private employers, the City relies on several cases having nothing to do with the First Amendment. *See Kelley*, 425 U.S. at 245 (rejecting due process challenge but noting that the "general contours" of the Fourteenth Amendment permit employer restrictions that would be impermissible under the stricter standards of the First Amendment); *Rodriguez v. City of Chicago*, 156 F.3d 771, 772 (7th Cir. 1998) (affirming summary judgment against police officer who sought exemption from duty at abortion clinic under Title VII).

disrepute." *Id.* at 81. Here, however, there is no evidence that Plaintiffs' tattoos suddenly brought disrepute upon the police department after years of displaying tattoos without controversy or complaint.

For the reasons stated in their opening brief (at 7-8, 14, 28-31), the City is required to show under *NTEU* that the Plaintiffs' display of their tattoos would have a "'necessary impact on the actual operation' of the Government." 513 U.S. at 468. But in any event, whether applying the *Pickering* or the *NTEU* test, this Court has consistently held that governmental employers may not restrict free speech based merely on speculative concerns. *E.g., Gazarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933, 944-45 (7th Cir. 2004) (reversing summary judgment for town and directing summary judgment for employee because town speculated but "produced no evidence that [plaintiff's] speech actually disrupted town affairs"); *Wainscott v. Henry*, 315 F.3d 844, 851-52 (7th Cir. 2003) (affirming summary judgment for employee who criticized city government on job site during work hours, where city "speculat[ed] about the 'distinct potential'" for disruption but presented no supporting evidence); *see also Chaklos v. Stevens*, 560 F.3d 705, 715 (7th Cir. 2009) (government employers' predictions of disruption from speech "must be 'supported with an evidentiary foundation and be more than mere speculation,'" quoting *Gazarkiewicz*).[7]

---

[7] *See also Waters v. Churchill*, 511 U.S. 661, 674 (1994) (noting "the government may have to make a substantial showing that the speech is, in fact, likely to be disruptive"); *Rankin*, 483 U.S. at 388-89 (affirming reversal of summary judgment where constable's office failed to submit evidence that speech "interfered with the efficient functioning of the office").

Although the City need not prove that Plaintiffs' tattoos had already disrupted police operations, it must demonstrate a *reasonable* expectation that the tattoos would cause such a disruption. *Wainscott*, 315 F.3d at 851-52. This the City did not and cannot do. In the history of the police department, the City had never banned police officers from displaying tattoos. In all that time, not only were there no actual disruptions; not one citizen even complained about a police officer's tattoo. (CA 14; City Brief at 20.)

Third, the City claims incorrectly (at 22) that Plaintiffs' opening brief never argued that their First Amendment interests outweighed the City's interests in enacting the Tattoo Ban, thus waiving the argument. On the contrary, Plaintiffs' opening brief established the importance of their right of free expression through their tattoos (at 10-17) and the insufficiency of the City's purported justifications for the Tattoo Ban (at 17-27). Plaintiffs explicitly argued (at 14) that the district court erred in finding that the City's interests outweighed Plaintiffs' interests in displaying their tattoos. The City cannot rely on the waiver doctrine to evade the merits of Plaintiffs' arguments.

Fourth, the City argues (at 29-32) that the Tattoo Ban's underinclusiveness does nothing to undermine the City's stated justification. The Tattoo Ban barred Plaintiffs from displaying any tattoos, even though police officers in casual dress were free to wear T-shirts emblazoned with designs identical to the tattoos. The City is wrong to argue that underinclusiveness is irrelevant to the First Amendment analysis of a government employer's restrictions on free speech. This

Court has repeatedly held the opposite. *E.g.*, *Chaklos v. Stevens*, 560 F.3d 705, 715-16 (7th Cir. 2009) ("The fact that defendants acted on this concern [regarding outside employment] on certain occasions and not others indicates that the concern is not legitimate."); *McGreal*, 368 F.3d at 680 (holding that police department's failure to discipline officer who threatened to shoot fellow officers cast doubt on department's assertion that it was concerned about potentially disruptive effect of plaintiff's speech criticizing the mayor); *see also NTEU*, 513 U.S. at 474 (holding that underinclusiveness of speech restrictions on government employees "undermines" government's justification); *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999) (holding that medical exemption for no-beard policy "undoubtedly undermines the Department's interest in fostering a uniform appearance").

The City also claims (at 31-32) that the Tattoo Ban had to be all-or-nothing, because a more nuanced approach would "discriminate on the basis of a tattoo's message." During the arbitration, a police department official testified that "he did not wish to be the arbiter of acceptability." (CA 15.) It may well be true that "a wholesale prophylactic rule is easier to enforce than one that requires individual . . . determinations." *NTEU*, 513 U.S. at 474. But the Supreme Court in *NTEU* expressly rejected that rationale, *id.* at 474-75, and this Court should do the same. If the City can allow casually dressed, on-duty police officers to wear T-shirts with messages that are neither degrading nor offensive (A 36), there is no reason the

City could not tailor its Tattoo Ban in the same way – as each branch of the military already does.

## Conclusion

For all the foregoing reasons, Plaintiffs respectfully request that this Court reverse the district court's dismissal of the complaint and remand the case to the district court for discovery and trial.

Respectfully submitted,

**Stowell & Friedman, Ltd.**

By: _  /s/  Linda D. Friedman  _

**Stowell & Friedman, Ltd.**
303 W. Madison Street
Suite 2600
Chicago, Illinois 60606
(312) 431-0888

## Certificate of Compliance with Type-Volume Limitation,
## Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Circuit Rule 32(c) because this brief contains 6696 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), as modified by Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word version 2010, with text and footnotes in 12-point Century font.

February 21, 2017                     /s/ Linda D. Friedman
                                      *Attorney for Plaintiffs-Appellants*

## Certificate of Service

| | |
|---|---|
| DANIEL MEDICI, DENNIS LEET, and JOHN KUKIELKA, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs-Appellants,<br><br>     v.<br><br>CITY OF CHICAGO,<br><br>     Defendant-Appellee. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 15-3610<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

I hereby certify that on February 21, 2017, I electronically filed the foregoing Reply Brief of Appellants with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  The following counsel will also be served via email on today's date:

        Myriam Zreczny Kasper
        Chief Assistant Corporation Counsel
        30 North LaSalle St., Suite 800
        Chicago, IL 60602
        myriam.kasper@cityofchicago.org


           s/ Linda D. Friedman